Warder et al. v. White.

BENJAMIN H. WARDER ET AL.

v.

JOHN P. WHITE.

1. AGENCY—PRINCIPAL UNKNOWN—OBLIGATION.—Where defendants had no acquaintance with, or knowledge of, the principal, a real estate broker, and they employed his agent to make a purchase for them, making a special contract with the agent as to services and compensation. *Held*, that inasmuch as the defendants, when they discovered that the plaintiff was the principal, could have held him responsible upon the contract which they made with his agent, the law would raise a reciprocal obligation on their part to respond to the principal on the same contract, subject to any equities arising in their favor before the discovery.

2. RIGHT OF PRINCIPAL TO SUE.—The right of the principal to sue in

Warder et al. v. White.

such case is paramount to that of the agent, and in cases where either may bring action, the former, by giving notice to the other contracting party, puts an end to the agent's right of action, except where the agent has a lien upon the subject-matter of the action equal to the claim of the principal.

3. Trust and confidence in agent.— The same rules of law announced above, apply where the contract with the agent involves personal trust and confidence as in other cases.

4. Notice by principal.—Where a check for commissions was given by defendants to an agent, and notice was served upon them by the plaintiff that he claimed the amount due, as principal, in ample time for defendants to stop payment on the check. *Held*, that, by giving the check defendants recognized the amount as clearly due from them, and let it be paid at their peril, and there is therefore no equity in their favor from that circumstance.

Appeal from the County Court of Cook county; the Hon. Mason B. Loomis, Judge, presiding. Opinion filed November 16, 1883.

Mr. I. K. Boyesen and Mr. Samuel Kerr, for appellants; that a broker or other agent, in whom special trust and confidence is reposed, can not delegate his authority without express power given for that purpose, cited Story on Agency, §§ 12, 13, 110, 201; Parsons on Contracts, 5th ed., 99; Edwards on Factors and Brokers, § 107, p. 142; Cockrain v. Islam, 2 M. & S. 501; Solby v. Rathbone, 2 M. & S. 298; Campbell v. Reeves, 3 Head (Tenn.), 226; Catlen v. Bell, 4 Campbell, 183; Schmaling v. Tomlinson, 6 Taunt. 147 (1 E. C. L.)

A real estate broker can not act adversely to his principal and recover commissions: Walker v. Osgood, 98 Mass. 348; Farnsworth v. Hemmer, 1 Allen, 494; Parsons on Contracts, 86, 5th ed; Cottom v. Holliday, 59 Ill. 178.

A broker is not entitled to commissions until the service he is employed to perform is consummated: Dalton v. Irwin, 4 Car. & P. 289; Broad v. Thomas, 7 Bingham, 99.

Messrs. Quigg & Tuthill, for appellee; as to when a verdict will not be disturbed, cited Johnson's Comp., 51 Ill. 219; O. & M. R. R. Co. v. Brown, 25 Ill. 124; Aurora F. Ins. Co. v. Eddy, 55 Ill. 213; Peru v. French, 55 Ill. 317; Fitch v. Zimmer, 62 Ill. 126; Robinson v. Parish, 62 Ill. 130; Toledo, W. & W. Ry. Co. v. Moore, 77 Ill. 217. 98, 429.

Warder et al. v. White.

As to an agent receiving payment of money due his principal: Story on Agency, §§ 98, 99, 181, 429; Favenc v. Bennett, 11 East, 36.

The giving of a check even when certified does not amount to payment: Brown v. Leckie, 43 Ill. 497; Beckford v. First Nat. Bk., 42 Ill. 238; Munn v. Burch, 25 Ill. 35.

After notice by appellee it was the legal duty of appellant Glessner to defer the payment of the money to any one, until he could safely pay the right man: Cohen v. Hale, 32 Ill.

MCALLISTER, P. J. This was assumpsit by White against Warder, Bushnell and Glessner to recover for commissions, etc., in effecting the purchase on behalf of defendants of certain real estate, which they desired to obtain. There was a trial under the general issue, resulting in a verdict and judgment for plaintiff for $750, and the defendants appealed to this court. It appeared on the trial that the plaintiff, White, was at the time in question, and for a long time previously had been, in the regular business of real estate agent and broker. It also appeared that the defendants had no acquaintance with or knowledge of him, and that they employed one Shields to make the purchase in question for them, making a special contract with him as to the services to be performed and compensation to be paid. Upon that ground, the defendants insist that there was no privity of contract between them and White. But it appears, or there was evidence tending to show, that at the time of such contract with Shields he was in the employment of White, as clerk in his office. To this the defendants say that the employment was one of special trust and confidence; and that inasmuch as Shields could not delegate his authority, the benefits of the contract could not inure to White as Shields' principal; so, even conceding that Shields was White's agent at the time defendants entered into the contract with him, there would, nevertheless, be no privity of contract between the defendants and the plaintiff, under the circumstances of this case, however the rule might be in other cases where no personal trust was reposed in the agent so employed.

All such commercial questions being of importance to the community, we have given to the one here that consideration which ought to lead to accuracy of conclusion, whether any such distinction as has been taken by counsel for appellants really exists.

The maxim *delegata potestas non potest delegari*, is not one of universal restriction: Hanalso v. Stein, 50 Ala. 347. And according to our view, it is not applicable, and can not be invoked in this case. The rights of White, the plaintiff, in no respect depend upon or arise out of any supposed delegation of authority from Shield to him, but spring from principles almost universally recognized in the law of agency, viz. that inasmuch as the defendants when they discovered that White was Shields' principal, could have held him responsible upon the contract which they made with Shields, the law would raise a reciprocal obligation on their part to respond to the principal on the same contract, subject, of course, to any equities arising in their favor, before such discovery.

No reason was suggested on the argument, and none, as we believe, can be suggested, why the plaintiff, White, could not have been held responsible to the defendants upon the contract which Shields made with them, or for any misconduct of the latter in the course of his employment to the defendant's injury, notwithstanding Shields contracted in his own name, and his relations to White were unknown to the defendants at the time: Story on Agency, §§ 160–161, and cases in notes; Barker v. Garvey, 83 Ills. 184.

" In such cases there arises a reciprocal obligation to the principal, on the part of the third person with whom such contracts are made, and for whose benefit, and with whose consent, such acts are done. In short, the general doctrine in all such cases is, that the principal, as the ultimate party in interest, is entitled against such third persons, to all the advantages and benefits of such acts and contracts of his agent": Story on Agency, § 418; Paley on Ag., by Lloyd, 223–326; Livermore on Ag. 281–284; Ewell's Evans on Agency, marg. p. 396.

It is not pretended in this case that the defendants are in

any respect prejudiced by the suit having been brought by the principal instead of by the agent; and the plaintiff gave them timely notice that he should insist upon the commissions being paid to him instead of to Shields. The rule of law in such case is, that the right of the principal to sue is paramount to that of the agent and in cases where either may bring the action, the former, by giving notice to the other contracting party, puts an end to the agent's right of action, except in cases where the agent has a lien upon the subject-matter of the action equal to the claim of the principal: Ewell's Evans on Ag., marg. p. 400–404.

The general rules above announced apply the same in cases where the contract with the agent involves personal trust and confidence as in other cases. In Grojan v. Wade, 2 Starkie, R. 443, Grojan sued Wade to recover the amount of fees, etc., due to him as a proctor, for procuring the probate of a will. It appeared on the trial that Wade employed one Owen to perform the services, who did perform them, and made out and presented a bill for them in his own name, and testified that it was his general practice to make out bills to clients in his own name. It further appeared that the defendant had known no other person in the transaction but Owen, he never having heard of the existence of the plaintiff. But it was also shown that Owen, during the transaction, was the mere clerk of the plaintiff. Abbott, C. J., was of opinion " that the circumstances of the defendant's ignorance, that Owen was the mere clerk and Grojan the principal, would not preclude the latter from recovering, it having been established on the oath of Owen, that the plaintiff really was the principal for whom he acted. If any prejudice had arisen to the defendant from the supposition that Owen was the principal, the case might be different; but that did not appear, and the sum claimed was clearly due from the defendant, since the business had been done. The case was like that of a factor, who conceals the name of his principal in selling goods." In that case, personal confidence was reposed in Owen, whom, alone, defendant employed.

It appears that on the 18th day of August, the same day

Warder et al. v. White.

on which the plaintiff notified the defendants of his claim, as principal, to the commissions in question, the defendants gave their check payable to Shields for $750, the stipulated commissions; but whether that was before or after such notice, is not very clear; one of the defendants testified that it was before. Whether it was before or after is not material, because it clearly appeared that the check was not paid by the bank until the following December. The defendants could have easily stopped payment, after they received plaintiff's notice, if they had chosen to do so. By giving the check they recognized the amount as clearly due from them, and let it be paid at their peril. There is no equity in their favor from that circumstance.

We are unable to perceive any substantial error in any of the instructions given for plaintiff, as they appear in the record. We have examined those which were asked for defendants and refused by the court, and think they were properly refused. As to the first of them, there was no evidence on which to base it. The second contains no hypothesis that Shields was not the clerk or agent of plaintiff, or that the relations stated in the instruction were the only relations subsisting between them, or that all their relations were terminated on or about the 1st of June, 1882, and before Shields entered into the contract with defendants to serve them in the capacity of broker.

The third instruction refused was obscure and misleading. The jury would fail to understand its meaning or application. The fourth was likewise misleading. The time when the defendants met Rue, the owner of the property, was not material or decisive, because the evidence shows that Rue acted through Cummings as his agent.

There was evidence sufficient to support the verdict, and we perceive no substantial error of law. The judgment will be affirmed.

Affirmed.